# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 19-1291

———————————————

United States of America

*Plaintiff - Appellee*

v.

Dion Clayborn

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

——————————

Submitted: January 17, 2020
Filed: March 4, 2020

——————————

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.

——————————

GRUENDER, Circuit Judge.

Dion Clayborn pleaded guilty to possession with intent to distribute a controlled substance. *See* 21 U.S.C. §§ 841(a)(1), (b)(2)(c), 860. The presentence investigation report recommended classifying Clayborn as a career offender under U.S.S.G. § 4B1.1 based on a controlled substance conviction in Illinois, *see* 720 Ill. Comp. Stat. 570/407(b)(2), and a controlled substance conviction in Iowa, *see* Iowa Code § 124.401(1)(d).

Clayborn objected to the classification, but the district court[1] overruled his objection, adopting an advisory sentencing guidelines range of 188 to 235 months. The district court varied downward and sentenced Clayborn to 144 months' imprisonment. Clayborn appeals, arguing that he should not have been classified as a career offender.

"We review classification as a career offender de novo." *United States v. Boose*, 739 F.3d 1185, 1186 (8th Cir. 2014). A conviction qualifies as a "controlled substance offense" for purposes of the career-offender enhancement if it is an offense "punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." § 4B1.2(b).

The Illinois and Iowa statutes under which Clayborn was convicted criminalize *delivery* of a controlled substance. *See* 720 Ill. Comp. Stat. 570/407(b)(2); Iowa Code § 124.401(1)(d). Clayborn first argues the statutes are "categorically not career offender predicates" because delivery does not "involve some commercial aspect." As a result, it does not fall within the guidelines' definition of a controlled substance offense. According to Clayborn, the definition of controlled substance offense in § 4B1.2(b) applies only to commercial drug trafficking crimes. He highlights the fact that the guidelines use the word "distribution" rather than "deliver," and he thus argues that his Illinois and Iowa convictions are not career-offender predicates.

Under the categorical approach, we ask whether the state statutes fit within the federal definition of a controlled substance offense. *See United States v. Maldonado*, 864 F.3d 893, 897 (8th Cir. 2017). "We interpret the Sentencing Guidelines using the ordinary tools of statutory interpretation." *United States v.*

---

[1]The Honorable Leonard T. Strand, Chief Judge, United States District Court for the Northern District of Iowa.

*Martinez*, 870 F.3d 1163, 1166 (9th Cir. 2017). Our inquiry "will most often begin and end with the text and structure of the Guidelines." *Id*. "The language of the Sentencing Guidelines, like the language of a statute, must be given its plain and ordinary meaning." *United States v. Fulford*, 662 F.3d 1174, 1177 (11th Cir. 2011).

Black's Law Dictionary defines distribute as, "[t]o apportion; to divide among several," "[t]o arrange by class or order," "[t]o deliver," and "[t]o spread out; to disperse." *Distribute*, Black's Law Dictionary (11th ed. 2019). Nothing in this ordinary definition requires a "commercial aspect." Indeed, the definition of distribute includes "deliver." We are similarly unpersuaded by Clayborn's argument that the words surrounding distribute require a commercial aspect. Import, for example, is defined as "[t]he process or activity of bringing foreign goods into a country." *Import*, Black's Law Dictionary (11th ed. 2019); *see also United States v. Gilmore*, 631 F. App'x 711, 713 (11th Cir. 2015) (per curiam) ("But, the plain language of the 'controlled substance offense' definition in the guidelines when Mr. Gilmore was sentenced, which includes 'possession of a controlled substance . . . with intent to . . . distribute[] or dispense,' illustrates that remuneration is not required." (alteration in original)).

Clayborn also points to the statute that directed the creation of the guidelines' career-offender provisions. *See* 28 U.S.C. § 994(h). He argues this statute "was very clearly aimed" at drug trafficking offenses. But this statute explicitly refers to the substance offenses described in § 401 of the Controlled Substances Act, 21 U.S.C. § 841, which we have said does not require an actual sale of drugs, *see United States v. Hernandez*, 986 F.2d 234, 238 (8th Cir. 1993) ("[N]either possession nor an actual sale by a defendant need be proved by the government on a charge of distributing or aiding and abetting the distribution of drugs [under § 841]."). In other words, § 841 does not require a commercial activity. We thus decline to find that the Illinois and Iowa statutes are categorically not career-offender predicates because they include the word "deliver," which may not involve a commercial activity.

Next, Clayborn argues that his Illinois and Iowa convictions are overbroad because they encompass inchoate offenses. Application Note 1 to § 4B1.2 provides that "controlled substance offense" includes "aiding and abetting, conspiring, and attempting to commit such offenses." Clayborn argues that Note 1 is "inconsistent with" or "a plainly erroneous reading" of § 4B1.2. *See Stinson v. United States*, 508 U.S. 36, 38 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). But Clayborn concedes that we have previously held that Note 1 "is a reasonable interpretation of the career offender guidelines." *United States v. Mendoza-Figueroa*, 65 F.3d 691, 694 (8th Cir. 1995); *see also United States v. Garcia*, 946 F.3d 413, 417 (8th Cir. 2019). Clayborn therefore argues that the Illinois and Iowa statutes are overbroad even if we consider Note 1 because "the Commentary does not reference attempted transfers or constructive transfers, as does Iowa law" in its definition of deliver, or "soliciting or mere agreeing, as does Illinois law."

Both of these arguments fail. As to Clayborn's argument about the Iowa statute, we held in *United States v. Maldonado*, 864 F.3d at 899-901, that a charge for possession with intent to deliver under Iowa Code section 124.401 was categorically a controlled substance offense. Further, "[t]he actual or constructive transfer of a controlled substance is rationally understood to be distribution, which is specifically included in the definition of a controlled substance offense set forth in § 4B1.2." *United States v. Roberts*, 255 F. App'x 849, 851 (5th Cir. 2007) (per curiam); *see also United States v. Glass*, 904 F.3d 319, 323 (3d Cir. 2018); *United States v. Redden*, 875 F.3d 374, 375 (7th Cir. 2017) ("Any conduct meeting the state's definition of 'delivery' comes within § 4B1.2(b) because 'transfer' is just another word for distribute or dispense."). As to Clayborn's argument about the Illinois statute, it is true that an individual can be charged in Illinois for aiding and abetting or solicitation. 720 Ill. Comp. Stat. 5/5-2(c). But Clayborn was not convicted under that statute—he was convicted under 720 Ill. Comp. Stat. 570/407(b)(2), so the solicitation statute is not relevant to whether Clayborn could be classified a career offender.

Finally, Clayborn argues that his Illinois conviction is too old to qualify as a career-offender predicate. Section 4A1.2(e) of the Guidelines provides the applicable time periods for computing criminal history. As relevant here, § 4A1.2(e)(1) imposes a time period that includes any prior sentence imposed within fifteen years of "commencement of the instant offense" if the sentence exceeded one year and one month. Application Note 8 explains that the term "commencement of the instant offense" includes "any relevant conduct." U.S.S.G. § 4A1.2 n.8. Based on this Note, the district court found that Clayborn's "relevant conduct" dated back to 2014, and Clayborn does not challenge this finding on appeal. Accordingly, the district court determined that Clayborn's Illinois conviction, the sentence for which was imposed in January 2000, was a career-offender predicate.

Clayborn argues that Note 8 is inconsistent with or a plainly erroneous reading of the guidelines. But in *United States v. Rosenkrans*, 236 F.3d 976, 977-78 (8th Cir. 2001), we considered whether Note 8 was contrary to the plain meaning of § 4A1.2(e)(2). We concluded that the "commentary is not plainly erroneous or inconsistent with the guideline it interprets," and we follow that holding here. Thus, the district court did not err in concluding that Clayborn's Illinois conviction qualified as a career-offender predicate offense.

For the foregoing reasons, we affirm.

_____